UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**WILLIAM R. LEE,**

        Plaintiff,

    v.                                    5:99-CV-872 (HGM)

**CHARLES A. GLESSING AND PALATINE NURSING HOME,**

        Defendant.
_____

**APPEARANCES:**                                **OF COUNSEL:**

ISEMAN, CUNNINGHAM, RIESTER & HYDE, LLP    BRIAN M. CULNAN, ESQ.
Attorneys for Plaintiff
9 Thurlow Terrace
Albany, New York 12203

PRIMO, PRIMO & KIRWAN, LLP                  TERRY J. KIRWAN, JR., ESQ.
Attorneys for Defendants
5112 West Taft Road, Suite J
Liverpool, New York 13088-4878

HANCOCK & ESTABROOK, LLP                   MICHAEL J. SCIOTTI, ESQ.
Attorneys for Defendants
1500 MONY Tower I
P.O. Box 4976
Syracuse, New York 13221-4976

**HOWARD G. MUNSON**
**Senior United States District Judge**

## MEMORANDUM - DECISION AND ORDER

        Currently before the Court is Defendants' motion seeking an order awarding Defendants costs of the action, including: (1) reasonable attorneys' fees pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 42 U.S.C. §§ 1988 and 2000e-5(k); (2) disbursements incurred during

litigation, including statutory costs ordinarily taxable under Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920; and, (3) other out-of-pocket expenses. *See* Dkt. No. 73, Defs.' Notice of Mot. Plaintiff opposes Defendants' motion. For the reasons that follow below, Defendants' motion is GRANTED.

## BACKGROUND

Plaintiff, William R. Lee, furnished physical therapy services to patients at Palatine Nursing Home ("Palatine") between May 17, 1995, and February 7, 1997, at which time Palatine notified plaintiff that it was terminating its contract with him. On June 5, 1999, Plaintiff filed a complaint against Defendants alleging that he was Palatine's employee, that Defendants created a sexually hostile environment for his work, and that Defendants discharged him on the basis of his gender or his perceived disability or in retaliation for his protected complaints. *See* Dkt No. 81, Summ. Order. The Court presided over a jury trial that began on September 17, 2001. On September 27, 2001, at the conclusion of Plaintiff's case-in-chief, Defendants moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 80, Index to the R. on Appeal. The Court granted Defendants' motion and dismissed Plaintiff's case in its entirety, finding that Plaintiff was an independent contractor rather than Palatine's employee and, even assuming that he was an employee, he could not prevail on any of his claims. On October 26, 2001, Plaintiff appealed the Court's ruling, and on November 6, 2002, the Second Circuit Court of Appeals affirmed holding that Plaintiff was not an employee for purposes of Title VII of the Civil Rights Act of 1964.[1] *See* Dkt. No. 69, Notice of Appeal; Dkt. No. 81, Summ. Order. Defendants brought their

---

[1] The Second Circuit affirmed solely on the basis that plaintiff was not an employee under Title VII: "Because we conclude that the district court correctly found Lee to be an independent contractor, we do not reach the adequacy of Lee's proof on his hostile environment and wrongful termination claims." Dkt. No. 81, Summ. Order.

motion for attorneys' fees while Plaintiff's appeal was pending. *See* Dkt. No. 73, Defs.' Notice of Mot. At Plaintiff's behest, Defendants, with the Court's approval, stayed their motion while plaintiff's appeal was pending before the Second Circuit. *See* Dkt. No. 77, Stay of Mot.

From the outset of his action through his appeal to the Second Circuit, Plaintiff was represented by Lewis B. Oliver, Jr., Esq. As of January 7, 2003, however, Plaintiff substituted Iseman, Cunningham, Riester & Hyde, LLP as counsel of record and Brian M. Culnan, Esq., has represented plaintiff in opposing Defendants' motion. *See* Dkt. No. 82, Consent to change Attorney.

## DISCUSSION

In the United States, under the so-called "American Rule," the prevailing party is not entitled to recover attorneys' fees as costs or otherwise from the losing party, and, therefore, litigants generally must pay their own attorneys' fees. *See* Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975); *see also* Christianburg Garment Co. v. Equal Employment Opportunity Comm'n, 434 U.S. 412, 415, 98 S.Ct. 694, 697, 54 L.Ed.2d 648 (1978). There are, however, exceptions to this general rule, including one found in Title VII.

**I.     Attorneys' Fees Under Title VII**

Title VII provides in pertinent part that: "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person." 42 U.S.C. § 2000e-5(k). In Christianburg Garment Co., the Supreme Court observed that "in enacting § 706(k) [of Title VII] Congress did not intend to permit the award of attorney's fees to a prevailing defendant only in a situation where the plaintiff was motivated by bad faith in bringing the action." 434 U.S. at 419, 98 S.Ct. at 699. Rather, "Congress intended to deter the bringing of lawsuits without foundation by

providing that the prevailing party–be it plaintiff or defendant–could obtain legal fees." Id. 434 U.S. at 420, 98 S.Ct. 700 (internal quotations and citation omitted); *see* Edwards v. Interboro Inst., 840 F.Supp. 222 (E.D.N.Y. 1994).[2]  Thus, under Christianburg Garment Co., a district court may award attorneys' fees to a prevailing defendant in a Title VII action only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." 434 U.S. at 421, 98 S.Ct. at 700 (1978); *cf.* LeBlanc-Sternberg v. Fletcher, 143 F.3d 765, 770 (2d Cir. 1998) ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees in favor of the defendant.") (internal quotations and citation omitted).  Application of this standard is entrusted to the sound discretion of the trial court.  *See* American Fed'n of State, County and Mun. Employees, AFL-CIO (AFSCME) v. County of Nassau, 96 F.3d 644, 650 (2d Cir. 1996).  The Supreme Court, however, cautioned restraint in applying this standard and implored district courts to

> resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation. This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success. No matter how honest one's belief that he has been the victim of discrimination, no matter how meritorious one's claim may appear at the outset, the course of litigation is rarely predictable. Decisive facts may not emerge until discovery or trial. The law may change or clarify in the midst of litigation. Even when the law or the facts appear questionable or unfavorable at the outset, a party

---

[2]In Edwards, the court aptly summarized the rationale behind awarding prevailing defendants attorneys' fees in Title VII cases: "The Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, was an enactment then long overdue and noble in its objectives. It unquestionably has served to deter, if not entirely eradicate, the pernicious practice of discrimination in employment decisions. It has, however, also unquestionably served to embolden disgruntled employees, who have been legitimately discharged because they were incompetent, insubordinate, or dishonest, to file suits alleging that they have been the victims of discrimination. The motives prompting those baseless filings may be inferred to be harassment or intimidation with a view towards being rehired. Whatever the motives, the frequency with which such cases are filed unduly burdens the federal courts and subjects innocent employers to incredible expense which they cannot recoup if successful notwithstanding 42 U.S.C. § 2000e-5(k)." Edwards, 840 F.Supp. at 231.

may have an entirely reasonable ground for bringing suit.

Christianburg Garment Co., 434 U.S. at 421-22, 98 S.Ct. at 700-01.

A plaintiff's subjective reliance on his attorney's advice does not preclude an award of attorneys' fees to a prevailing defendant in Title VII actions. *See* Davidson v. Keenan, 740 F.2d 129, 134 (2d Cir. 1984) (Mansfield, J., concurring). "[A]n attorney is his client's agent and representative; the client retains ultimate authority over the conduct of the litigation . . . Whether or not [plaintiffs'] reliance on their attorneys' judgment was misplaced, they are legally responsible for the filing of these actions. The consequences of their attorneys' mistakes should not be visited on the [other side] . . . ." Davidson, 740 F.2d at 133 (quoting Prate v. Freedman, 583 F.2d 42, 48 (2d Cir. 1978)). Thus, plaintiff's professed reliance on the advice of his former counsel, Mr. Oliver, with regard to whether he was an employee under Title VII, and as to his likelihood of success in pursuing his claims, is of little consequence to the Court in determining whether to award Defendants attorneys' fees. *See* Dkt. No. 84, Lee Aff. at ¶ 7.

**II.     Costs Under Title VII**

The Second Circuit does not apply the Christianburg standard in determining the assessment of costs in Title VII actions. In Cosgrove v. Sears, Roebuck & Co., 191 F.3d 98 (2d Cir. 1999), the Second Circuit declined to extend to the Christianburg standard to costs assessment. In so declining, the Second Circuit explained that "[w]hereas the magnitude and unpredictability of attorney's fees would deter parties with meritorious claims from litigation, the costs of the suit in the traditional sense are predictable and, compared to the costs of attorney's fees, small." Cosgrove, 191 F.3d at 101 (citing Poe v. John Deere Co., 695 F.2d 1103, 1108 (8th Cir. 1982)). The Second Circuit, therefore, held that the decision of whether to award costs to a defendant under Rule 54(d) of the

Federal Rules of Civil Procedure was "committed to the sound discretion of the district court." Id. at 102 (quoting ARP Films, Inc. v. Marvel Entm't Group, Inc., 952 F.2d 643, 651 (2d Cir. 1991)).

**III.   Entitlement to Award**

   *A.   Prevailing Party*

The parties do not dispute that Defendants prevailed against Plaintiff on both his Title VII retaliation claim and his gender discrimination and sexual harassment claims. The Court granted defendants' motion *in limine* to dismiss Plaintiff's Title VII retaliation claim and granted Defendants' motion for judgment as a matter of law at the conclusion of plaintiff's case-in-chief. Clearly Defendants prevailed for purposes of 42 U.S.C. § 2000e-5(k).

   *B.   Frivolity of Plaintiff's Claims*

      1.   Summary Judgment

Courts, in determining whether the evidence suffices to allow a reasonable jury to find in a plaintiff's favor, apply the same standard to pretrial motions for summary judgment and motions for judgment as a matter of law during or after trial. *See* Parker v. Sony Pictures Entm't, 260 F.3d 100, 111 (2d Cir. 2001) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). At first blush, Plaintiff's claims, having survived defendants' motion for summary judgment, might appear to be non-frivolous, reasonable, and well-founded. *See* AFSCME, 96 F.3d at 652 ("Generally, where evidence is introduced that, if credited, would suffice to support a judgment, fees are unjustified."); Piesco v. Koch, 12 F.3d 332, 341-42 (2d Cir. 1993) ("[W]hen we have reversed the granting of summary judgment, the district court cannot properly grant judgment as a matter of law on the basis of trial evidence that is not substantially different [from that presented on summary judgment]."); *see also* LeBeau v. Libbey-Owens-Ford Co., 799

F.2d 1152, 1158 (7th Cir. 1986). In LeBeau, the Seventh Circuit reversed the district court's grant of attorneys' fees to the defendant where the Equal Employment Opportunity Commission had established a *prima facie* case, and the district court had denied the defendant's motions for summary judgment and a directed verdict. The Seventh Circuit noted, however, that the fact that a suit survives summary judgment does not necessarily preclude a court from later finding the suit frivolous. *See* id. at n.7; *cf.* Dangler v. Yorktown Cent. Sch., 777 F.Supp. 1175, 1178 (S.D.N.Y. 1991) (disagreeing with plaintiff's argument that because the court did not grant summary judgment to defendants, the case must have had sufficient merit to preclude the court from deeming the action frivolous: "questions of motive cannot be decided on motion because credibility is an issue of fact").

Similarly, in the instant case, the Court denied Defendants' motion for summary judgment because in employment discrimination cases, summary judgment is ordinarily inappropriate, for the "allegations therein require exploration into an employer's motivation and intent for an employment decision." Lee v. Glessing, 140 F.Supp. 215, 219 (N.D.N.Y. 2001). First, in analyzing Plaintiff's Title VII Sex Discrimination claim, the Court concluded that "it is impossible for the court to resolve [the claim] as the reason for plaintiff's dismissal has become a question of fact. As factual disputes must be resolved at trial by a jury, summary judgment is inappropriate." Lee, 140 F.Supp. at 220. Second, in analyzing whether Plaintiff was an employee or independent contractor, the Court was "unable to determine the actual nature of plaintiff's employment relationship with defendants." Id. at 221. Finally, in analyzing Plaintiff's hostile work environment claims, the Court concluded that Plaintiff had sufficiently stated a claim to withstand summary judgment. In making this determination, however, the Court noted that it was a "close issue," that there were "several glaring deficiencies in plaintiff's complaint," and that "[w]hile the harassment suffered by plaintiff may

seem somewhat insubstantial, the court cannot say, as a matter of law, that no reasonable jury would find that a hostile work environment existed." Id. at 222-23.  Thus, inasmuch as the Court denied defendants' motion for summary judgment, the Court could not characterize, at that stage, Plaintiff's claims as frivolous.  The trial that followed, however, shed new light on the nature of Plaintiff's claims.

   2. Trial

  The trial on Plaintiff's claims exposed their frivolity and unreasonableness.  After Plaintiff's counsel and Defendants' counsel conducted their direct, cross, redirect, re-cross, and re-redirect examinations of Plaintiff, the court "examined" plaintiff.  During the Court's examination of Plaintiff, the Court repeatedly, over twenty times, asked Plaintiff to identify the sexual harassment of which he complained.  Plaintiff was highly evasive and non-responsive in his answers.  At the conclusion of the Court's examination of Plaintiff, it was clear that Plaintiff was not able to convey how he felt that Defendants discriminated against him or sexually harassed him: while Plaintiff's complaint indicates that he perceived a sexually hostile work environment and that Defendants discharged him on the basis of his gender or his perceived disability or in retaliation for his protected complaints, his dialogue with the Court demonstrated that he had not experienced any sexual harassment or discrimination for purposes of his federal lawsuit.  Plaintiff failed to relate a single instance in which he experienced discrimination or sexual harassment during the time he worked at Palatine.  *See* Dkt. No. 72, Tr. of Pl.'s Test. at 765-800.  For example, when the Court asked plaintiff to identify the people who allegedly made threatening comments to him, Plaintiff responded that he did not know and was not sure who made the comments.  *See* id. at 765-66.  Plaintiff indicated that he was offended when Mr. Mancini, who is not a party to this action, referred to him as "Bruce Lee."

When the court asked how this reference was harassing, Plaintiff responded that the term had an effeminate connotation and that he had numerous encounters with the Mancinis, but he did not explain how the reference was harassing to him. See id. at 776. Plaintiff then alleged that Mr. Mancini's "fist had contacted [his] nose." See id. at 777. When the Court asked plaintiff to explain what he meant by "fist in the nose," Plaintiff responded that he had used the expression symbolically, that when Mr. Mancini made the Bruce Lee reference, he had symbolically punched plaintiff in the nose. See Dkt. No. 72, Tr. of Pl.'s Test. at 778-79. The fact that Plaintiff failed to cite any specific instance in which he experienced discrimination or sexual harassment supports the conclusion that his claims in this regard were frivolous. See Briskovic v. Our Lady of Mercy Med. Ctr., 2000 WL 890182 at *1 (S.D.N.Y. July 5, 2000) (explaining that plaintiff's claim was unreasonable and groundless, if not frivolous, where he had failed to "cite a single instance reflecting animus against him because of his national origin in the five years preceding his discharge").

In granting Defendants' motion for judgment as a matter of law, the court explained that Plaintiff was an independent contractor rather than an employee and dismissed the Plaintiff's action. This finding is alone would appear to be an insufficient basis upon which to award attorneys' fees. Cf. Hosler v. Greene, 1998 WL 760265 at * 2 (N.D.N.Y. October 22, 1998) (McAvoy, J.) (explaining that there was a legitimate dispute as to whether defendants were employers under the Americans with Disabilities Act and Pregnancy Discrimination Act and that as such, attorneys' fees were not warranted). In the instant case, however, the Court added that even if Plaintiff were an employee, it would find that

> plaintiff's case with regard to sexual harassment and all of the other claims that have been made against the defendants in this case are not supported by the proof in this case. It seems . . . that there are many elements of sexual harassment that have not been proved in this case, and that is based upon the plaintiff's own testimony. I don't

9

want to say too much, because I think if I did, that would overstep my bounds as to what I really think about this case. In any event, it seems to me that the plaintiff, Mr. Lee, has not by a preponderance of the evidence shown any sexual harassment by the Palatine Nursing Home or employees of the Palatine Nursing Home.

Dkt. No. 72, Trial Tr. at 1145.

        3.     Plaintiff's Subjective Belief

In opposing Defendants' motion for attorneys' fees, Plaintiff related the following series of events that formed the basis of his subjective belief that he was the victim of sexual harassment by his coworkers:

- The women employed at the Nursing Home frequently joked in his presence about sex and sexual encounters, told "off-color" jokes and stories, and sometimes openly teased him about such matters.

- Women in the break room talked about such things as "blowing one another" and "who had screwed whose husband."

- JoAnn Failing, Director of Nursing, said to him at a line dancing class that she liked to line up behind him because "[she] liked to watch [his] butt."

- Joyce Wall, a certified nurse assistant who worked with him as a physical therapy aide, said to him in the break room, "if you don't use it [his penis], you will lose it, it will drop off. We will step on it." After Ms. Wall made this statement, all of the other women in the break room laughed uproariously.

- On several occasions, women in the break room, including Ms. Wall, talked about raping him, saying "Maybe we ought to rape him. Maybe he wouldn't be so shy." Plaintiff found such comments offensive and asked the women to stop making them.

- The women in the break room told him that he needed a "good screw."

Dkt. No. 84, Lee Aff. at ¶ 4.

**IV.   Reasonable Attorneys' Fees**

The responsibility for determining attorneys' fees falls to the Court. *See* <u>Bingham v. Zolt</u>,

10

66 F.3d 553, 565 (2d Cir. 1995). The Court need not, however, "become enmeshed in a meticulous analysis of every detailed facet of the professional representation." Seigal v. Merrick, 619 F.2d 160, 164 n. 8 (2d Cir. 1980). As the Supreme Court has indicated, "a request for attorney's fees should not result in a second major litigation." Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983). In order to determine reasonable attorneys' fees, the Court must first establish a "lodestar" figure by multiplying the number of hours reasonably expended during the attorney's representation by a reasonable hourly rate. See McKever v. Vandollen, 681 F.Supp. 999, 1002 (N.D.N.Y. 1988) (Cholakis, J.). With respect to the hours expended, the Court must "consider whether the [number] of hours claimed reasonably reflect the quantity and quality of the work performed." Fiacco v. City of Rensselaer, 663 F.Supp. 743, 745 (N.D.N.Y. 1987) (Cholakis, J.) (quoting Thomas v. Bd. of Educ., 505 F.Supp. 102, 103 (N.D.N.Y. 1981) (Foley, J.)). If the court determines that a party's billing reflects excessive or redundant time, then it may reduce the award accordingly. See Hensley, 461 U.S. at 433-34; 103 S.Ct. at 1939-40. With respect to the hourly rate claimed, the court shall determine whether it is reasonable by ascertaining what "the normal rate in the legal community [is] for substantially similar work by competent practitioners." Fiacco 663 F.Supp. at 745 (citation omitted). There is, however, a strong presumption that the lodestar figure represents a reasonable amount. See Abou-Khadra v. Bseirani, 971 F.Supp. 710, 714 (N.D.N.Y. 1997). In the Northern District of New York, as a general rule, the hourly rate for work attributable to attorneys with significant experience and numerous years of practice is $175; the hourly rate for work attributable for attorneys with four or more years of experience is $125; the hourly rate for work attributable to newly-admitted attorneys practicing less than four years is $100; and, the hourly rate for work attributable to paralegals is $65. See Catskill Mountains Chapter of Trout Unlimited,

Inc. v. City of New York, 244 F.Supp.2d 41, 56 (N.D.N.Y. February 6, 2003); IBEW Local 910 Welfare, Annuity & Pension Funds v. Dexelectrics, Inc., 98 F.Supp.2d 265, 275 (N.D.N.Y. 2000); People *ex rel.* Vacco v. Rac Holding, Inc., 135 F.Supp.2d 359, 363 (N.D.N.Y. 2001).

**V.     Defendants' Attorneys and Services Rendered**

Defendants were represented by Michael J. Sciotti, Esq. of Hancock & Estabrook, LLP ("H&E"), and Terry J. Kirwan, Jr. Esq. of Primo, Primo & Kirwan, LLP ("PPK"). During the course of H&E's representation, Mr. Sciotti, other partners, associates, and legal assistants amassed fees totaling $85,775. *See* Dkt. No. 73, Sciotti Aff. at ¶ 23. Mr. Sciotti's work on this matter constitutes the bulk of H&E's fees: he accumulated 368.8 hours at $185 per hour for a total of $68,228. *See* id. at Ex A. During the course of PPK's representation, Mr. Kirwan, an associate, a law clerk, and legal assistant amassed fees totaling $46,245. *See* id. Kirwan Aff. at ¶15. Mr. Kirwan's work on this matter constitutes the bulk of PPK's fees: he accumulated 75.6 hours at $150 per hour and 166.7 hours at $155 per hour for a total of $37,178.50. *See* id. at Ex C. Both Mr. Sciotti and Mr. Kirwan aver that the hours they expended on Defendants' behalf were reasonable and necessary in order to properly defend against Plaintiff's claims. *See* Dkt. No. 73, Sciotti Aff. at ¶ 19; Kirwan Aff. at ¶ 11. Defendants also contend that services performed by legal assistants are compensable in the Northern District of New York. *See* Travis v. Owego-Apalachin Sch. Dist., 1990 WL 136671 at *1 (N.D.N.Y. September 21, 1990) (awarding fees for paralegals' work).

In addition, Defendants seek an award of costs and disbursements incurred during litigation, including statutory costs ordinarily taxable under Rule 54(d)(1) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920 and other out-of-pocket expenses. During the course of H&E's representation, it incurred expenses totaling $15,614.51 for various services: long distance telephone

calls, facsimiles, photocopies, travel, postage/FedEx, courier service, messenger service, stenographic service, photography/supplies, court reporter fees, witness fees, expert witness fees, investigation report, medical reports/records, service of subpoenas, court reporter/deposition expenses, Department of Motor Vehicle searches, computerized legal research, stub searches, and miscellaneous trial research materials. *See* Dkt. No. 73, at Ex B. During the course of PPK's representation, it incurred expenses totaling $1,702.18 for various services: long distance telephone calls, facsimiles, photocopies, postage/FedEx, messenger service, court reporter/deposition expenses, and computerized legal research. *See* id. at Ex. D. Sciotti and Kirwan jointly submitted a Bill of Costs with regard to fees of the court reporter for all or any part of the transcript necessarily obtained for use in the case, which totaled $1,160.50. *See* Dkt. No. 76, Bill of Costs. In total, Defendants seek $149,336.69 in attorneys' fees, costs and disbursements.

**VI.     Plaintiff's Objections and Ability to Pay**

   *A.     Objections*

Although Plaintiff argues that his claims do not warrant the Court awarding Defendants attorneys' fees, he does not object, *arguendo*, to the hourly rates sought by either Sciotti or Kirwan. *See* Dkt. No. 83, Pl.'s Mem. of Law in Opp'n to Defs.' Application for Fees at 12. In general, however, Plaintiff finds the attorneys' fees and costs sought by Defendants excessive. First, plaintiff, objects to the number of hours expended by H&E: while Mr. Kirwan, who handled the action through discovery and a summary judgment motion, participated in trial preparation and attended the trial, seeks compensation for only 222.3 hours, Mr. Sciotti, who served as "trial counsel" from June 22, 2001 through early November 2001, seeks compensation for 368.8 hours. *See* Dkt. No. 83, Pl.'s Mem. of Law in Opp'n to Defs.' Application for Fees at 13. In contrast, Mr. Oliver billed

13

Plaintiff only $32,000 for handling his entire case–from filing the complaint through the appeal to the Second Circuit. *See* Dkt. No. 84, Lee Aff. at ¶ 7. Second, Plaintiff objects to Defendants' legal assistants' fees amassed during trial. Plaintiff suggests that such billing is duplicative. Third, although not disputing Defendants' right to receive compensation for time spent preparing their attorneys' fees application, Plaintiff finds the 35.2 hours billed for such preparation excessive. Finally, Plaintiff finds the costs sought by H&E excessive, particularly when compared to those incurred by PPK: H&E's costs were nine times greater than those incurred by PPK. Plaintiff asserts that several of the costs for which Defendants seek reimbursement are of a general nature, *i.e.*, investigation report and "stub searches," with no description indicating why they were necessary to the defense of this action. Plaintiff also contends that other items, such as computerized legal research are not compensable in a Bill of Costs. *See* Dkt. No. 83, Pl.'s Mem. of Law in Opp'n to Defs.' Application for Fees at 13.

    B.    *Ability to Pay*

In awarding attorneys' fees, the Court must consider Plaintiff's ability to pay. The assessment of fees must be fair and reasonable based upon the particular circumstances of the case. In determining a fee, the Court should consider the plaintiff's earning capacity, his financial resources and ability to pay the sum awarded. In addition the Court may also consider the relative financial status of the defendant. Therefore, while the Court is to enforce the deterrent purpose of attorneys' fees, it should not subject the losing party to financial ruin. *See* Colucci v. New York Times, 533 F.Supp. 1011, 1012-13 (S.D.N.Y. 1982) (reducing lodestar figure of $31,975 to $1,500).

At the time of Defendants' motion, Plaintiff worked as a physical therapist on a per diem basis at Ellis Hospital in Schenectady, New York and earned approximately $28,000 from his work.

14

*See* Dkt. No. 83, Pl.'s Mem. of Law in Opp'n to Defs.' Application for Fees at 14.

**VII.   Determination of Award**

A prevailing party in an action under Title VII may recover "a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983); *accord* Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 95 (2d Cir. 2004) (*per curiam*) (citing Blum v. Stenson, 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984)). The result of this calculation is commonly called the "lodestar" amount and is presumed to be a reasonable fee. *See* Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). The fee applicant has the burden of submitting evidence to support the hours worked and the rates claimed. *See* Hensley, 461 U.S. at 433.

Because Title VII provides no standard by which to determine a matter's frivolity in the context of a motion for attorneys' fees, the Court borrows and applies the standard from Rule 11 of the Federal Rules of Civil Procedure: an argument constitutes a frivolous legal position if, under an "objective standard of reasonableness," it is clear that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands. *See* Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc., 28 F.3d 259, 264 (2d Cir. 1994). With this definition in mind, standing alone, the Court's finding that Plaintiff was an independent contractor and not an employee is an insufficient basis to award defendants attorneys' fees. When coupled with the frivolity of Plaintiff's other claims, however, an award of attorney's fees is appropriate.

Defendants' counsel submitted copies of time records in support of the amounts claimed to

have been expended for attorneys' fees. Having reviewed the records, the Court finds that the time spent and costs generated are generally reasonable. The Court, however, must reduce the requested hourly rates to comport with the Northern District's prevailing rates at the time the services were rendered.

| Attorney/ Staff Member | Requested Hourly Rate | Requested Hours | Requested Amount | Allowed Hourly Rate | Allowed Hours | Allowed Amount |
|---|---|---|---|---|---|---|
| Attorney Michael J. Sciotti | $185 | 368.8 | $68,228 | $175 | 368.8 | $64,540 |
| Attorney Michael L. Corp | $210 | 2 | $420 | $175 | 2 | $350 |
| Attorney Catherine A. Diviney | $185 | .7 | $129.50 | $175 | .7 | $122.50 |
| Attorney Kevin E. McCormick | $225 | 3 | $675 | $175 | 3 | $525 |
| Attorney Laurel E. Baum | $145 | 2.9 | $420.50 | $125 | 2.9 | $362.50 |
| Attorney Lindsey H. Hazelton | $145 | .5 | $72.50 | $125 | .5 | $62.50 |
| Attorney John M. Monahan | $145 | 5.25 | $761.25 | $125 | 5.25 | $656.25 |
| Attorney John G. Powers | $160 | .25 | $40 | $125 | .25 | $31.25 |

| | | | | | | |
|---|---|---|---|---|---|---|
| Attorney Maureen E. Maney | $110 | 13.25 | $1,457.60 | $100 | 13.25 | $1,325 |
| Paralegal Carolyn A. Clifford | $95 | 104.5 | $9,927.50 | $65 | 104.5 | $6,792.50 |
| Paralegal Mary Jo Guard | $95 | 30.75 | $2,921.25 | $65 | 30.75 | $1,998.75 |
| Paralegal Cheryl Jantzi | $95 | 4.6 | $437 | $65 | 4.6 | $299 |
| Paralegal Linda A McLean | $95 | 1.25 | $118.85 | $65 | 1.25 | $81.25 |
| Paralegal Cynthia E. Wade | $95 | .75 | $71.25 | $65 | .75 | $48.75 |
| Law Clerk James Skloda | $95 | 1 | $95 | $65 | 1 | $65 |
| Attorney Terry J. Kirwan | $150 | 75.6 | $11,340 | $150 | 75.6 | $11,340 |
| Attorney Terry J. Kirwan | $155 | 166.7 | $25,838 | $155 | 166.7 | $25,838 |
| Law Clerk Robert A. Feinberg | $95 | 15.7 | $1,491 | $65 | 15.7 | $1,020.50 |
| Attorney Eric W. Sherwood | $125 | 55 | $6,875 | $125 | 55 | $6,875 |

| Legal Assistant Donna Sue Wilcox | $35 | 20 | $700 | $35 | 20 | $700 |
|---|---|---|---|---|---|---|
| Costs | | | $15,614.51 (H&E) $1,702.18 (PPK) | | | $15,614.51 (H&E) $1,702.18 (PPK) |
| | | | **Total Requested** $149,336.69 | | | **Total Allowed** $140,350.44 |

Having decided the initial lodestar calculation, the Court now decides whether an upward or downward adjustment is warranted by factors such as the extent of success in the litigation and the degree of risk associated with the claim, *see* Hensley, 461 U.S. at 434 & n. 9, 103 S.Ct. 1933, 76 L.Ed.2d 40 (citation omitted), and Plaintiff's ability to pay. In light of Plaintiff's ability to pay, as the Court understands it, the $149,336.69 sum requested by Defendants and as recalculated by the Court seems rather onerous and a reduction is appropriate to avoid Plaintiff's financial ruin.

Plaintiff's case is similar to David v. Apfel, Levy, Zlotnick & Co., 1994 WL 532745 (S.D.N.Y. September 29, 1994) in which the plaintiff brought claims pursuant to 42 U.S.C. § 1981, Title VII, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. After a three-day trial, the court granted defendants' motion for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, finding that in regard to his Title VII claims, the plaintiff had "failed to meet his burden of proving by a preponderance of the credible evidence that his gender, race, color, or national origin was a determinative factor in defendants' decision to discharge him." David, 1994 WL 532745 at * 1. In assessing the defendants' motion for attorneys' fees, the

court found that the plaintiff had pursued his Title VII claims without any reasonable basis in fact, having failed to present any evidence from which a reasonable inference could be made that his gender or race had any bearing on defendants' decision to fire him. This lead the court to conclude that the plaintiff's claims were frivolous, and it awarded the defendants attorneys' fees. The court, however, reduced the lodestar figure and costs from $60,788 to $10,000 based on the plaintiff's inability to pay the full amount. Id. at *1-2. Accordingly, the Court reduces the lodestar figure and awards attorneys' fees in the amount of $12,500, sixty-eight percent of which should be allocated to H&E and thirty-two percent of which should be allocated to PPK.

## CONCLUSION

**WHEREFORE**, after careful consideration of the file in this matter including the parties' submissions, oral argument, and the applicable law, the Court hereby **GRANTS** Defendants' motion for an award of attorney's fees in the amount of $12,500. The Clerk of the Court is directed to enter judgment in this amount in favor of Defendants and against Plaintiff.

**IT IS SO ORDERED.**

Dated: August 30, 2006
Syracuse, New York

_____
Howard G. Munson
Senior U.S. District Judge